**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| **BONNIE COLE,** | |
| **Plaintiff,** | |
| **v.** | **1:17-cv-1378-WSD-AJB** |
| **COBB COUNTY SCHOOL DISTRICT and CHRIS RAGSDALE, Individually and in his capacity as Superintendent of COBB COUNTY SCHOOL DISTRICT,** | |
| **Defendants.** | |

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge Alan J. Baverman's

Non-Final Report and Recommendation [20] ("Non-Final R&R").  The Non-Final

R&R recommends that the Court grant in part and deny in part Defendants Cobb

County School District and Chris Ragsdale's (collectively, "Defendants") Motion

to Dismiss Plaintiff's First Amended Complaint [14] ("Motion to Dismiss").  Also

before the Court are Defendant Cobb County School District's Objections to the

Magistrate's Non-Final R&R [22] ("Objections").

# I. BACKGROUND

## A. Facts[1]

In 1998, Plaintiff began working for Cobb County School District ("CCSD") as a teacher at Vaughan Elementary School. (First Amended Complaint [11] ¶ 11). In 2004, Plaintiff became Assistant Administrator of Bullard Elementary School ("Bullard"). (Id. ¶ 12). Two years later, in 2006, Plaintiff became Assistant Principal of Bullard. (Id. ¶ 13). During the 2014-15 school year, Plaintiff and several other teachers implemented in the classrooms breathing and stretching exercises based on yoga[2] and meditation[3] in an effort to reduce stress and encourage relaxation among Bullard's teachers and students. (Id. ¶ 16). Plaintiff

---

[1] The parties have not objected to the facts set out in the Non-Final R&R, and finding no plain error, the Court adopts them. For purposes of this Order, the Court takes the well-pleaded facts set forth in the Amended Complaint as true. See Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1367 (11th Cir. 1997); Duke v. Cleveland, 5 F.3d 1399, 1402 (11th Cir. 1993) ("We must take the complaint's allegations as true and read them in the light most favorable to the plaintiffs.") (citation omitted).

[2] Yoga is defined as "a Hindu spiritual and ascetic discipline, a part of which, including breath control, simple meditation, and the adoption of specific bodily postures, is widely practiced for health and relaxation." Yoga, *The New Oxford Am. Dictionary* (2001 ed.).

[3] Meditation refers to the action of thinking deeply or focusing one's mind for a period of time. Meditate, Meditation, *The New Oxford Am. Dictionary* (2001 ed.).

did not consider the techniques to be religious or based in religion.  (Id. ¶ 17).

Plaintiff is a practicing Christian.  (Id. ¶ 15).

The mindfulness practices consisted of techniques used to promote general

well-being, facilitate education, and reduce disruptive behaviors.  (Id. ¶ 18).  With

teacher input, Plaintiff and others also decorated a faculty room with soft lighting,

fountains, and peaceful music, and designated it a place where faculty could relax

in a quiet environment: where they could "take a few deep breaths, color

mandalas,[4] or play with kinetic sand."  (Id. ¶ 20).  In July 2015, Plaintiff became a

licensed reiki practitioner[5] and opened a side business offering reiki services to the

public.  (Id. ¶¶ 25-26).  She alleges she did not perform reiki or promote her

practice at the school.  (Id. ¶¶ 25-26).  The mindfulness program was similar to

programs introduced elsewhere in CCSD, including the Department of Physical

Education and the county counseling department.  (Id. ¶ 22).

---

[4]     Traditionally, a mandala is defined as "a Hindu or Buddhist graphic symbol of the universe," specifically, "a circle enclosing a square with a deity on each side."  Mandala, *Merriam-Webster's Collegiate Dictionary* (10th ed. 1993).  It is also more generally defined as "a graphic and often symbolic pattern usually in the form of a circle divided into four separate sections or bearing a multiple projection of an image."  Id.

[5]     Reiki is "a healing technique based on the principle that the therapist can channel energy into the patient by means of touch, to activate the natural healing processes of the patient's body and restore physical and emotional well-being."  Reiki, *The New Oxford Am. Dictionary* (2001 ed.).  The literal Japanese translation is "universal life energy."  Id.

In February 2016, Bullard sent a newsletter to parents stating that mindfulness practices included "piping music through the hallways," "decorating and painting," "yoga sequences," and "mindful quiet time." (Id. ¶ 19). After implementing the mindfulness practices, Bullard documented a thirty-three-percent decrease in disruptive behaviors and policy violations for the period spanning November 2, 2015, through March 4, 2016. (Id. ¶¶ 23-24). During the 2015-16 school year, some parents who attended church with Defendant Ragsdale and the Chair of CCSD's board, Randy Scamihorn, made religion-based complaints to Ragsdale about Plaintiff's use of mindfulness practices at Bullard. (Id. ¶ 27). Ragsdale expressed his support for the complaints and advised the parents that such information "helps tremendously." (Id. ¶ 28).

On February 29, 2016, CCSD received an anonymous letter complaining about the use of mindfulness practices. (Id. ¶ 29). Five members of the CCSD board also received the anonymous letter. (Id. ¶ 29). CCSD then received emails from parents stating that Plaintiff was a Buddhist,[6] and was attempting to

---

[6] Buddhism is a widespread Asian religion dating to the fifth century, B.C. Buddhism, *The New Oxford Am. Dictionary* (2001 ed.). It "has no creator god and gives a central role to the doctrine of karma." Id. "The 'four noble truths' of Buddhism state that all existence is suffering, that the cause of suffering is desire, that freedom from suffering is nirvana, and that this is attained through the

indoctrinate their children with Buddhism. (Id. ¶ 30). Plaintiff was also allegedly falsely accused of leading chants in the hallways, placing stones on children in an effort to "heal" them, forcing children to color mandalas green for Buddha, and requiring children to bow to her in hallways. (Id. ¶ 31). Plaintiff was further accused of attempting to indoctrinate children into Buddhism by reading the book "Peaceful Piggy Meditation," which was written by a Jewish author and apparently does not espouse any particular religion, but merely describes the practice of meditation. (Id. ¶ 33).

Plaintiff denied the allegations, and CCSD's investigations failed to substantiate them. (Id. ¶ 32). On March 16, 2016, several parents held a prayer rally on the grounds of Bullard "for Jesus to rid the school of Buddhism." (Id. ¶ 34). The next day, two women stood outside Plaintiff's office with their hands on her windows, praying. (Id. ¶ 34). Community members posted selectively chosen and out-of-context passages from Plaintiff's personal business website in an effort to attack her "evil practices," forcing her to take the web page down. (Id. ¶ 35). Defendants became aware that the controversy attracted national attention from the media, including The Washington Post. (Id. ¶ 36).

---

'eightfold' path of ethical conduct, wisdom, and mental discipline (including meditation)." Id.

Several members of CCSD's administration initially voiced support for Plaintiff and assured her that the situation was "not her fault" and that she would not be moved. (Id. ¶ 37). On March 17, 2016, the principal of Bullard, Patrice Moore, held a meeting—open to all parents—to explain mindfulness and to answer questions. (Id. ¶ 38). Sometime after the meeting, an attendee sent emails to CCSD, Ragsdale, and CCSD's human resources department in which he summarized his concerns and stated that he could not see how the school community could heal if Plaintiff were allowed to stay in her job. (Id. ¶ 39). During the same period of time, the CCSD board, including Ragsdale, received numerous emails of support from parents, teachers, a school psychologist, speech-language pathologists, and special educators, praising Plaintiff, her work, and the practices of mindfulness and yoga as showing positive results with students. (Id. ¶ 40).

In March 2016, CCSD halted all mindfulness practices at Bullard and issued a statement to that effect. (Id. ¶ 44). The statement did not state that the practices were in fact secular or defend Plaintiff against the false accusations. (Id. ¶ 45). Fearing for her job, Plaintiff asked certain members of CCSD district leadership to support her in defending herself from the false allegations. (Id. ¶ 46). She also stated to at least two members of the district leadership—John Adams and Grant

Rivera—that she was being discriminated against based on community members' beliefs about her religion. (Id.).

On March 24, 2016, Ragsdale and CCSD's board voted to move Plaintiff to another school, Mableton Elementary, sixteen miles further from her home. (Id. ¶¶ 47-48). The transfer added an hour to Plaintiff's daily commute. (Id. ¶ 49). Mableton Elementary is also allegedly a lower-performing school and offers fewer academics, sports, and extra-curricular activities than Bullard Elementary. (Id. ¶ 49).

B.    Procedural History

On April 18, 2017, Plaintiff filed her Original Complaint. ([1]). On May 11, 2017, Defendants filed their Initial Motion to Dismiss.[7] On May 25, 2017, Plaintiff filed her Amended Complaint ([11]). In it, Plaintiff asserts claims against CCSD pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq., for "reverse religious

---

[7]    The Non-Final R&R recommends dismissing as moot the also-pending Motion to Dismiss Plaintiff's Complaint [9] ("Initial Motion to Dismiss") filed on May 11, 2017. The Magistrate Judge found that Plaintiff properly amended her complaint after the Initial Motion to Dismiss was filed, and that because the Initial Motion to Dismiss seeks to dismiss a superseded pleading it must be denied as moot. Defendants concede this point, and no party has filed objections regarding this recommendation. ([14.1] at 1, n.1). Finding no plain error, the Court adopts the Magistrate Judge's recommendation to dismiss as moot the Initial Motion to Dismiss.

discrimination," (Count I), and retaliation, (Count II).   Plaintiff also asserts claims against CCSD and Ragsdale under the Free Exercise and Establishment Clauses of the First Amendment of the United States Constitution, as enforced through 42 U.S.C. § 1983, (Count III and IV, respectively).  ([11] ¶¶ 1, 51-78).

On June 8, 2017, Defendants filed their second Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Defendants argue (1) Plaintiff's religious discrimination claim fails because Title VII does not permit claims based on a "perceived" protected class; (2) Plaintiff's retaliation claim fails because it does not allege or oppose an employment practice made unlawful by Title VII, and thus it cannot constitute the type of protected activity necessary to support a retaliation claim; (3) Plaintiff's Free Exercise claim fails because her activities—exercise and breathing techniques—are not religious in nature, and thus Plaintiff cannot state a claim that Defendants interfered with her right to exercise the religion of her choice; and (4) Plaintiff's Establishment Clause claim fails because she does not "identify any action or policy of Defendants which interfered with her religion."  ([14.1] at 2-4).

On December 6, 2017, the Magistrate Judge issued his Non-Final R&R.  The Magistrate Judge first concluded that Plaintiff's Title VII "reverse religious discrimination" claim is sufficiently pled because (1) recently decided persuasive

authority indicates that an employer's motive or intent to discriminate implicates Title VII liability even if Plaintiff is asserting her claim as a member of a "perceived" protected class and (2) Plaintiff has pled facts sufficient to support discrimination based on non-conforming religious beliefs because she states that she was subject to an adverse employment action as the result of "false allegations that she held 'unacceptable' religious beliefs, including Buddhism, and because her Yoga and Reiki practices were considered offensive to the religious faiths of CCSD board members, including Defendant Ragsdale."  ([20] at 18-30).  The Magistrate Judge further found Plaintiff's retaliation claim should survive because Plaintiff in fact alleges that she made a request for support from CCSD district leadership in the face of community members' threats regarding her job.  (Id. at 34).

The Magistrate Judge also found that Plaintiff failed to sufficiently plead her Free Exercise Clause claim because the practices at issue, by Plaintiff's admission, did not constitute religious activity or reflect her sincerely held religious beliefs.  (Id. a 41).  The Magistrate Judge found that he could not grant Defendants' Motion to Dismiss with respect to Plaintiff's Establishment Clause claim because Defendants failed to advance sufficient arguments or authority explaining why the claim is not properly pled.  (Id. at 43-44).  With regard to liability, the Magistrate

Judge found that Plaintiff's allegations, taken as true and construed in the light most favorable to her, are sufficient to state a plausible allegation that the majority of the CCSD board voted to transfer her based on perceptions that she did not conform to the community's Christian values. The Magistrate Judge found finally that Plaintiff failed to meet her burden to show that Ragsdale was not entitled to qualified immunity, and thus recommended dismissing him from the action. ([20] at 54).

On December 20, 2017, Defendant CCSD filed its Objections to the Non-Final R&R. CCSD first argues that Title VII "does not by its plain language protect against perceived discrimination," that courts in this District have held that a plaintiff cannot bring a "perceived as" claim under Title VII, and that, since "[t]his Court is not a legislature," the Court should reject the Magistrate Judge's recommendation "improper[ly] expan[ding] [] Title VII beyond any current binding authority." ([22] at 2-22). CCSD next argues the Magistrate Judge wrongly concluded that Plaintiff in fact engaged in protected activity—thus sufficiently pleading a retaliation claim. ([22] at 5-7). CCSD states that Title VII protects against employees "opposing" unlawful employment practices, and that, here, Plaintiff's request to be defended against community members' complaints is not opposition to an unlawful employment practice. (Id.).

CCSD further argues that because Establishment Clause cases are not decided by bright-line rules, but on a case-by-case basis, "it is not surprising that Defendants were unable to locate any case directly on point with the facts at hand." ([22] at 8). CCSD argues that, even if Plaintiff alleged facts sufficient to make out an Establishment Clause claim, she has failed to show municipal liability. That is, Plaintiff has "failed to allege facts to suggest that any Board Member (much less a majority of the members) acted on any of the community member's complaints or that a majority of the Board Members otherwise acted in a manner that violated the Establishment Clause." (Id. at 11). CCSD does not otherwise object to the Non-Final R&R.

## II.  LEGAL STANDARDS

### A.  Review of a Magistrate Judge's Report and Recommendation

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see also Jeffrey S. by Ernest S v. State Bd. of Educ. Of

State of Ga., 896 F.2d 507, 512, 513 (11th Cir. 1990).

B.    <u>Standard on a Motion to Dismiss</u>

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual inferences." <u>Wooten v. Quicken Loans, Inc.</u>, 626 F.3d 1187, 1196 (11th Cir. 2010). Although reasonable inferences are made in the plaintiff's favor, "'unwarranted deductions of fact' are not admitted as true." <u>Aldana v. Del Monte Fresh Produce, N.A.</u>, 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting <u>S. Fla. Water Mgmt. Dist. v. Montalvo</u>, 84 F.3d 402, 408 n.10 (11th Cir. 1996)). Similarly, the Court is not required to accept conclusory allegations and legal conclusions as true. <u>See</u> <u>Am. Dental Ass'n v. Cigna Corp.</u>, 605 F.3d 1283, 1290 (11th Cir. 2010) (construing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570). Mere "labels and conclusions" are insufficient. <u>Twombly</u>, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  This requires more than

the "mere possibility of misconduct."  Am. Dental, 605 F.3d at 1290 (quoting

Iqbal, 556 U.S. at 679).  The well-pled allegations must "nudge[] their claims

across the line from conceivable to plausible."  Id. at 1289 (quoting Twombly, 550

U.S. at 570).

## III.    DISCUSSION

### A.    Sections of the R&R to Which a Party Objects

The Court conducts a *de novo* review of those portions of the Non-Final

R&R to which CCSD objects.  28 U.S.C. § 636(b)(1).  CCSD argues that the Non-

Final R&R incorrectly concluded (1) Plaintiff is permitted to bring an "as

perceived" discrimination claim under Title VII; (2) Plaintiff sufficiently pled a

retaliation claim, including that she engaged in protected activity; (3) Defendants

failed to provide sufficient argument or authority challenging Plaintiff's

Establishment Clause claim; and (4) Plaintiff sufficiently alleged municipal

liability.  The Court addresses each of these claims in turn.

#### 1.    Title VII Claims

Title VII makes it unlawful for an employer "to fail or refuse to hire or to

discharge any individual, or otherwise to discriminate against any individual with

respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Title VII also makes it unlawful for an employer to retaliate against an employee because: (1) "[s]he has opposed any practice made an unlawful employment practice by [Title VII]," or (2) "[s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a).

To state a claim under Title VII, a plaintiff must prove that the defendant acted with discriminator intent.  Hawkins v. Ceco Corp., 883 F.2d 977, 980-81 (11th Cir. 1989); Bernstein v. Ga. Dep't of Educ., 970 F. Supp. 2d 1340, 1355 (N.D. Ga. 2013). A plaintiff can support her claim with direct or circumstantial evidence.  Dixon v. The Hallmark Cos., 627 F.3d 849, 854 (11th Cir. 2010); EEOC v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002).

a)     Reverse Religious Discrimination

In Count I of the Amended Complaint, Plaintiff asserts a claim for "reverse" religious discrimination.  ([11] ¶¶ 51-59).  She states that she suffered an adverse employment action in the form of a transfer to a different and lower-performing school sixteen miles further away from her home and that this treatment was the direct result of "false allegations that she held 'unacceptable' religious beliefs,

including Buddhism, and because her Yoga and Reiki practices [sic] were considered offensive to the religious faiths of CCSD board members, including Defendant Ragsdale." (Id. ¶¶53-54).

The Magistrate Judge found that Plaintiff's allegations are sufficient to plead a claim of "reverse" religious discrimination under Title VII, stating that, "[w]hile there is no controlling precedent directly on point, the Court is persuaded by Plaintiff's proffered authority and other recent cases." ([20] at 18). In making this finding, the Magistrate Judge first relied on the following statement from Jones v. UPS Ground Freight, 683 F.3d 1283, 1299-1300 (11th Cir. 2012): "[A] harasser's use of epithets associated with a different ethnic or racial minority than the plaintiff will not necessarily shield an employer from liability for a hostile work environment." Id. 1299-1300. The Eleventh Circuit in Jones also referenced the EEOC Compliance Manual, which states:

> Title VII's prohibition of race discrimination generally encompasses: . . . Employment discrimination against an individual based on a belief that the individual is a member of a particular racial group, regardless of how the individual identifies himself. Discrimination against an individual based on a perception of his or her race violates Title VII even if that perception is wrong.

EEOC Compliance Manual § 15–II (2006); see also Jones v. UPS Ground Freight, 683 F.3d 1283, 1300, n.42 (11th Cir. 2012).

The Jones case is unpersuasive as applied to the facts of this case.  Jones involved a workplace harassment claim arising from alleged racial discrimination.  Although it involved a misconceived "racial slur" based on the plaintiff's dark complexion, Jones also involved a number of other instances of harassment linked directly to the plaintiff's African-American descent, including the alleged placing of bananas around the workplace and plaintiff's colleagues wearing of Confederate apparel.  Jones, 683 F.3d at 1300-01.  The court in Jones also held that the misconceived "racial slur" would not, "[b]y itself, . . . constitute the sort of harassment that is actionable under the statute."  Id. at 1300.  Finally, contrary to the EEOC Manual's section on race, the Manual's section on religious discrimination lacks any of the language quoted in the Jones decision regarding discrimination based on perceptions.  See EEOC Compliance Manual § 12 (2006).  The facts in Jones were that the plaintiff suffered alleged, intentional racial discrimination by his employer.  Here, Plaintiff does not allege that Defendants, as opposed to some parent, believed that Plaintiff was Buddhist or that Plaintiff's meditation methods were based on Buddhism, or any other religion.

The Magistrate Judge also relied on E.E.O.C. v. Abercrombie & Fitch Stores, Inc., 135 S. Ct. 2028, 2030-31 (2015), for the proposition that "§ 2000e-2(a)(1) prohibits certain *motives,* regardless of the state of the actor's

knowledge." The <u>Abercrombie</u> case, however, does not apply here because it
concerned a claim for reasonable accommodation and because the aggrieved
individual did, in fact, hold the religious belief the defendant found objectionable
and was the claimed motive for discrimination. ([20] at 33-34). Here, there is no
evidence that Plaintiff was discriminated against based on her religion. Defendants
did not perceive Plaintiff was a member of an actual or perceived protected
religious class of Buddhists. Finally, the Magistrate Judge, relying on <u>Jones</u> and
<u>Abercrombie</u>, chose to set aside the one decision from this District, albeit
unpublished, directly on point. (<u>Id.</u> at 18-2). The Opinion and Order, issued by
Judge Thrash, adopting Magistrate Judge Gerrilyn G. Brill's Non-Final Report and
Recommendation, states, in relevant part:

> The undersigned finds that Plaintiff cannot state a claim for
> discrimination based on his perceived race, ethnicity, and/or national
> origin, and summary judgment should be granted on those claims.
> Title VII does not explicitly protect persons who are *perceived* to
> belong to a protected class. *See* 42 U.S.C. § 2000e-2; *Butler v.*
> *Potter,* 345 F.Supp. 2d 844, 850 (E.D.Tenn.2004) ("Title VII protects
> those persons that belong to a protected class, *see* 42 U.S.C. § 2000e-
> 2(a)(1), and says nothing about protection of persons who are
> perceived to belong to a protected class."). Additionally, Plaintiff has
> not cited any controlling authority which would permit a claim for
> perceived race or national origin discrimination, and this Court is
> unaware of any such precedent. *Accord Butler,* 345 F.Supp.2d at 850.

<u>Uddin v. Universal Avionics Sys. Corp.</u>, No. 1:05-CV-1115-TWT, 2006 WL
1835291, at *6 (N.D. Ga. June 30, 2006).

The Court cannot conclude that Jones or Abercrombie, taken separately or together, warrant the conclusion that Plaintiff may now bring, in contradiction to the plain language of Title VII and the reasoning in Uddin, an "as perceived" religious discrimination claim under Title VII. Indeed, the Amended Complaint does not allege that any Defendant believed Plaintiff was Buddhist or was seeking to practice or promote Buddhism, or that she was dismissed based on her religion, which in this case is alleged to be Christian. The Court declines to import, as Plaintiff requests, an interpretation of Title VII that is not supported by Title VII's plain language. The Court is "not a legislature." ([22] at 4). See, e.g., Shockley v. Commissioner of IRS, 686 F.3d 1228, 1235 (11th Cir. 2012) ("Unless the statute is ambiguous, [a court's inquiry] begins and ends with the statute's plain language."). The Court sustains CCSD's Objections, and declines to adopt the Magistrate Judge's findings and recommendation that the Title VII "as perceived" religious discrimination claim asserted here is not required to be dismissed.[8]

---

[8]     The theory of Plaintiff's Title VII "reverse" discrimination/perceived belief claim is innovative, but unprecedented and contorts existing authority and the language of Title VII itself. Plaintiff appears to rely on an aberration of a "cat's paw" theory—arguing that an employer who makes an employment decision could have imputed to it the beliefs and motives of third-parties external to the organization. Assuming such a theory could ever be justified, it does not apply here where Plaintiff does not allege that Defendants believed Plaintiff was Buddhist, or that the wellness program was Buddhist-based—all of which Plaintiff

The Court finds that a plaintiff may not pursue an "as perceived" claim for religious discrimination under Title VII, and similarly finds unpersuasive the Magistrate Judge's findings and recommendation regarding Plaintiff's claim for failure to conform to a particular religion. ([20] at 18-30). Neither the Magistrate Judge in his Non-Final R&R, nor the parties, cite any controlling precedent supporting that a failure to conform claim based on a perceived religion is enforceable in this Circuit. The Magistrate Judge relies on a few cases from other district courts in this Circuit and other circuits to support his conclusion that

_____

alleges she denied to Defendants and the public generally. Indeed, Plaintiff's complaint is that "CCSD District Leadership" failed "to support her in defending against the false allegations against her, and stated that she was being discriminated against based on community members' beliefs about her religion." ([11] ¶ 46). She alleges further that her transfer was a "humiliating and public demonstration of the District's lack of support of Ms. Cole, [and] it made clear to the community that religious activities will be allowed as long as they are part of the 'accepted' religion of Christianity as understood and practiced by members of the CCSD Board of Education and Defendant Ragsdale." (Id. ¶ 50). To the extent Plaintiff alleges complaints about the wellness program were made, Plaintiff alleges "[i]nvestigations by CCSD failed to substantiate these allegations, which Plaintiff strenuously denied." ([11] ¶ 32). The Amended Complaint is simply devoid of a plausible claim that Defendants discriminated against her based on her religion or a "perception" that her beliefs were Buddhist. There are no factual allegations in Plaintiff's Amended Complaint showing that Defendants even considered Plaintiff's wellness program religious in nature, or that it favored Christian or any other faith-based programs in its school. There is no allegation in the Amended Complaint that Plaintiff's transfer had anything to do with her religious beliefs. Indeed, Plaintiff was an avowed Christian who declined to allege Defendants acted to discriminate against her based on her faith.

Plaintiff may pursue a failure to conform claim based on her perceived religion.

See, e.g, Venters v. City of Delphi, 123 F.3d 956 (7th Cir. 1997); Shapolia v. Los

Alamos Nat'l Lab., 992 F.2d 1033, 1036 (10th Cir. 1993); Burrows v. Coll. of

Cent. Fla., No. 5:14-cv-197-Oc-30PRL, 2014 WL 7224533, at *2 (M.D. Fla. Dec.

17, 2014); Panchoosingh v. Gen. Labor Staffing Servs., Inc., No. 07-80818-CIV,

2009 WL 961148, at *6 (S.D. Fla. Apr. 8, 2009). These cases are not controlling

or otherwise persuasive. There are no alleged facts that any Defendant believed

Plaintiff was a Buddhist.[9] The Court declines to adopt the Magistrate Judge's

findings and recommendation that Plaintiff asserts a viable reverse discrimination

or perceived religious beliefs claim under Title VII and the Objection based on this

finding is sustained.

b)  Retaliation

Plaintiff also alleges that Defendants retaliated against her in violation of

Title VII when they "[d]eclin[ed] to provide institutional support to Plaintiff

against wild and baseless accusations made by a small group of parents who

---

[9]      Even if our Circuit recognized a failure to conform claim based on a
perceived religion, the Court concludes it does not, that claim is not asserted in this
action. Plaintiff here does not allege she was discriminated against for holding
religious beliefs different from those of her supervisor. Plaintiff admits, like her
supervisor and the chair of CCSD's board, she is a practicing Christian, and that
the practices she was implementing at her former school were not based in religion
and were not religious. ([11] ¶¶ 15, 27).

believed mindfulness and yoga were in contradiction to their Christian beliefs" and "[d]isciplin[ed] Plaintiff by transferring her to a lower rated school further from her home without cause after she attempted to defend the mindfulness program." ([11] ¶¶ 60-64). Based on the Court's holding that a "perceived as" religious discrimination claim is not actionable under Title VII and that Plaintiff does not state a plausible reverse discrimination claim, discussed in Section III(1)(a), above, the Court concludes Plaintiff's claim for retaliation under Title VII based on her perceived religion or alleged reverse discrimination also fails.

Even if Plaintiff were allowed to proceed on her retaliation claim based on her perceived religion, the Court, contrary to the Magistrate Judge's findings and recommendation, does not believe Plaintiff has alleged facts sufficient to state a claim for retaliation under Title VII. "Title VII prohibits an employer from retaliating against an employee 'because [the employee] has opposed any practice made an unlawful employment practice . . ., or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." McCann v. Tillman, 526 F.3d 1370, 1375 (11th Cir.2008); 42 U.S.C. § 2000e-3(a). "A prima facie case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was

a casual connection between the protected activity and the adverse employment action." Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008). Title VII does not limit protection to individuals who file formal complaints, but extends it to those "who informally voice complaints to their superiors." Rollins v. State of Fla. Dep't of Law Enf't, 868 F.2d 397, 400 (11th Cir. 1989).

"Where a plaintiff is engaged in protected conduct pursuant to the 'opposition clause,' a plaintiff need not prove that the underlying discriminatory conduct that she opposed was actually unlawful, but rather must show that she had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." Knott v. DeKalb Cty. Sch. Sys., 624 F. App'x 996, 997-98 (11th Cir. 2015); see also Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir.1997). "A plaintiff must not only show that she subjectively, in good faith, believed that her employer was engaged in unlawful employment practices, but also that her belief was objectively reasonable in light of the facts and record." Id. A plaintiff will not satisfy the objective reasonableness inquiry where the plaintiff fails to cite any statutory or case law that could reasonably be believed to support the plaintiff's claim. Dixon v. Hallmark Cos., 627 F.3d 849, 857 (11th Cir.2010).

In her Amended Complaint, Plaintiff states that, "[f]earing for her job, [she]

asked members of CCSD District Leadership . . . to support her in defending against the false allegations against her, and stated that she was being discriminated against based on community members' beliefs about her religion." Plaintiff further states that, "[o]n March 24, 2016, the Board and Mr. Ragsdale capitulated to the complaining parents' demands and voted to move Ms. Cole to another school 16 miles further from her home." ([11] ¶¶46-47). Although it is unclear from Plaintiff's Amended Complaint, it appears Plaintiff alleges that there were two "unlawful employment practices" that occurred in this case: (1) Defendants failure to protect Plaintiff from community members' "wild and baseless accusations" and (2) Defendants transfer of Plaintiff to another, lower-performing school. With regard to the former, the community members are not Plaintiff's employer for purposes of Title VII. Thus, even if certain community members advocated for some employment action, Plaintiff's complaint about those threats is not opposition to a "practice made an unlawful employment practice by Title VII" and is not a cognizable adverse employment action.

42 U.S.C. § 2000e-2 ("It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color,

religion, sex, or national origin; or to limit segregate, or classify his employees . . . in any way which would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.").  Plaintiff, moreover, does not allege any facts that she opposed her transfer, or otherwise communicated with Defendants about the transfer—either before or after it occurred.  Even construing all allegations in favor of Plaintiff, Plaintiff fails to allege facts sufficient to show that she engaged in any protected activity—that is, that she "opposed" an unlawful employment practice as defined by Title VII.

Defendants' Objection is sustained as to the Non-Final R&R's finding that Plaintiff pled facts sufficient to state a claim for retaliation under Title VII.  On its *de novo* review, the Court finds that Plaintiff is not permitted to proceed with a retaliation claim under the guise of a "perceived" religion or reverse discrimination, and that, even if she were, she did not sufficiently plead retaliation.  Plaintiff's claim is therefore dismissed.

2.    Establishment Clause Claim

In Count IV, Plaintiff alleges Defendants violated the Establishment Clause of the First Amendment by failing to remain neutral and by adopting the religious perspective of a particular group of parents who complained about Plaintiff's

implementation of mindfulness practices.  ([11] ¶¶ 50, 74).  Plaintiff further alleges that Defendants violated the Establishment Clause by allowing Christian practices to take place on school grounds, "including educators' use of CCSD computers to spread certain 'acceptable' Christian devotional materials, while not allowing [Plaintiff] the same opportunities with regard to her secular yoga and mindfulness program."  (Id. ¶¶ 41-43, 75).  Defendants argue in their Motion to Dismiss that Plaintiff's Establishment Clause claim fails because Plaintiff does not identify any CCSD policy or practice that constituted an establishment of one religion over another.  ([14.1] at 13).  Defendants also assert that Plaintiff admits that her yoga-related activities were not religious, and that it thus "defies logic that any action taken regarding these admittedly secular activities would invoke any aspect of the First Amendment."  (Id. at 13-14).

The Magistrate Judge found that "[w]hile Defendants purport to raise the issue of the sufficiency of Plaintiff's pleading of her Establishment Clause claims, they do not set forth any legal authority establishing the elements that must be pleaded in order to state a plausible claim under the Establishment Clause," "[n]or do they otherwise explain why Plaintiff's allegations that overtly Christian

practices were allowed at the school,[10] that parents complained that Plaintiff did

not conform to their religious beliefs, and that Plaintiff was transferred after prayer

vigils and religiously based complaints to CCSD employees and the CCSD

board, . . . are insufficient to state a claim under the Establishment Clause."

([20] at 42-43).  The Magistrate Judge concluded that it would not serve as *de facto*

counsel and make arguments on Defendants' behalf, and that, by "simply rais[ing]

an issue without providing supporting argument or authority," the issue was not

"properly before the Court."  (Id. at 43).  For these reasons, the Magistrate Judge

recommended denying Defendants' Motion to Dismiss.

Defendants object to the Magistrate Judge's recommendation on the grounds

that they "pointed out that there is no case law supporting Plaintiff's contention

---

[10]     The Amended Complaint does not support that "overtly Christian practices
were allowed at the school."  ([20] at 43).  The Amended Complaint only alleges
that the school did not stop some educators from using CCSD computers "to
spread certain 'acceptable' Christian devotional materials, while not allowing
[Plaintiff] the same opportunities with regard to her secular yoga and mindfulness
program."  ([11] at 14).  Plaintiff does not allege any time period during which this
alleged conduct occurred or whether any Defendants knew about it or were
involved in it.  The Court further notes that Plaintiff alleges she was not prohibited
from setting up a meditation room or from implementing her mindfulness program
in the school.  The allegations here are not factually sufficient to support a
plausible claim.

that she can state a violation of the Establishment Clause based on any action
Defendants took with respect to what Plaintiff admits were non-religious
activities." ([22] at 8).  Defendants further argue that, "given that Plaintiff freely
admits that her yoga and related mindfulness activities were not religious in nature,
any action taken with respect to those activities by definition had nothing to do
with religion, much less show a preference for a certain religion over another as
necessary to show a violation of the Establishment Clause. " (Id. at 8-9).

Upon further review of Defendants' Motion to Dismiss, and Plaintiff's
Amended Complaint, the Court agrees with the Magistrate Judge that this issue is
not properly before the Court.   Defendants do not submit any legal authority and
only one paragraph of argument to support their Motion.  The Court cannot, on this
basis alone, evaluate whether Plaintiff has or has not adequately pled her
Establishment Clause claim and assuming the facts alleged are true, the Court
concludes a plausible Establishment Claim has been alleged, albeit barely.  The
Court overrules CCSD's Objections on this issue, and denies the Motion to
Dismiss on Plaintiff's Establishment Clause claim.

3.    Official Capacity Claims

Defendants alternatively argue that even if Plaintiff states claims for a
violation of her First Amendment rights in Counts III and IV, the claims still fail as

a matter of law because Plaintiff has not alleged a basis for assigning liability to CCSD or Ragsdale in his official capacity. ([14.1] at 14-17). "A municipality may not be held liable for the torts of its employees on a *respondeat superior* theory." Lewis v. City of Union City, 877 F.3d 1000, 1020 (11th Cir. 2017) (citing Monell v. Dep't of Soc. Serv. of City of New York, 436 U.S. 658 (1978). "Instead, municipalities may only be held liable for the execution of a governmental policy or custom." Id. (internal quotations omitted). The Supreme Court has clarified that "municipal liability may be imposed for a single decision by municipal *policymakers* under appropriate circumstances." Pembaur v. City of Cincinatti, 475 U.S. 469, 470 (1986); see also Morro v. City of Birmingham, 117 F.3d 508, 514 (11th Cir. 1997). "In addition to identifying conduct attributable to the municipality, a plaintiff alleging municipal liability under § 1983 must show that 'the municipal action was taken with the requisite degree of culpability, i.e., that the municipal action was taken with deliberate indifference to its known or obvious consequences.'" Doe v. Sch. Bd. of Broward Cty., Fla., 604 F.3d 1248, 1263 (11th Cir. 2010). Generally, liability attaches in those instances in which the discriminatory motive is shared by a majority of the members making the decision. Mason v. Village of El Portal, 240 F.3d 1337, 1339 (11th Cir. 2001).

Here, Plaintiff conclusorily alleges that the "Board and Mr. Ragsdale capitulated to the complaining parents' demands and voted to move [Plaintiff] to another school." ([11] ¶ 47). The Magistrate Judge found that "[w]hile it is true that Plaintiff has not ple[d] facts specific to the intent of each individual board member, she has asserted far more than mere labels and conclusions or formulaic recitation of the elements of a cause of action and has ple[d] facts showing that Defendants were at least aware of the religious nature of the community complaints." ([20] at 45). The Magistrate Judge cited the following allegations from Plaintiff's Amended Complaint to support his finding:

> [T]hat parents who attended church with Ragsdale and the Chair of CCSD's board made religiously based complaints, that a letter about the complaints went to five members of the CCSD board, that CCSD was "inundated" with emails stating that Plaintiff was a Buddhist, that parents held a prayer rally on campus, that the controversy attracted national media attention, that a member of the community emailed Ragsdale and the CCSD human resources department summarizing the concerns and calling for Plaintiff's job, and that CCSD halted the mindfulness practice and the board transferred Plaintiff despite results showing that the mindfulness practice she championed dramatically decreased disruptive behavior and policy violations.

([20] at 46). The Magistrate Judge concluded that "these pleadings are sufficient to state a plausible allegation that the majority of the CCSD Board voted to transfer Plaintiff based on perceptions that she did not conform to the community's Christian values." ([20] at 47).

29

CCSD argues that the Magistrate Judge wrongly concluded that the Board's "aware[ness]" that community members made complaints "equate[s] to a plausible showing that the Board [] acted based on those complaints." (Id. at 10). CCSD argues that, instead, Plaintiff must plead facts sufficient to show that "a majority of the Board Members were motivated by an impermissible reason." (Id. at 11); see also Popham v. Cobb County School Dist., No. 1:10-CV-2174-TWT, 2013 WL 4028893, at *5-6 (N.D. Ga. Aug. 7, 2013). The Court finds that, while CCSD may be correct that Plaintiff ultimately must show that a majority of the Board members were motivated by an impermissible reason, the Court agrees with the Magistrate Judge that the facts alleged in Plaintiff's Amended Complaint are minimally sufficient, at this stage of the proceeding, to plead municipal liability. CCSD's Objection on this basis is overruled, and its Motion to Dismiss on this basis is denied.

### 4. Sections of the R&R to which No Party Objects

No party submitted objections to the remainder of the Non-Final R&R. The Court thus conducts a plain error review of the remainder of the Magistrate Judge's findings and recommendations. See Slay, 714 F.2d at 1095. The first claim the Court reviews for plain error is Plaintiff's allegation that Defendants violated the Free Exercise Clause of the U.S. Constitution "[b]y punishing [her] for not

30

conforming to an accepted predominant standard of religious belief and practice"

and "[b]y transferring [her] due to the perception that she was 'Buddhist' and

allegedly engaging in 'Buddhist' practices." ([11] ¶¶ 67-68). The Eleventh Circuit

has held that "[t]o plead a valid free exercise claim, [the plaintiff] must allege that

the government has impermissibly burdened one of [her] 'sincerely held religious

beliefs.'" Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1294 (11th Cir. 2007 (quoting

Frazee v. Ill. Dep't of Emp't Sec., 489 U.S. 829, 834 (1989). The Magistrate

Judge found that "Plaintiff confirms the practices at issue did not constitute

religious activity or reflect her sincerely held religious beliefs," "she makes no

allegation that Defendants burdened her Christian beliefs," and "she cites no

authority plausibly suggesting that the protection of the Free Exercise Clause of the

U.S. Constitution extends to adverse employment actions undertaken due to an

employer's mistaken beliefs about the employee's religious convictions or

practices or the employee's failure to conform to an accepted or predominant

standard of religious belief or practice." ([20] at 41; see also [11] ¶¶ 15, 17, 67-

68; [15] at 18-20). The Magistrate Judge ultimately recommended that Plaintiff's

claim under the Free Exercise Clause (Count III) be dismissed. ([20] at 41). The

Court agrees. Plaintiff plainly admits that she is a practicing Christian, and that

she did not believe that the practices that she was teaching were "religious or based

in religion." ([11] ¶¶ 15, 17). Circuit precedent dictates that Plaintiff cannot plausibly state a claim under the Free Exercise Clause without having a "sincerely held religious belief" burdened. The Court finds no plain error in the Magistrate Judge's decision, and adopts the Magistrate Judge's recommendation regarding Plaintiff's Free Exercise Clause claim.

The second claim the Court reviews for plain error concerns whether Defendant Ragsdale should be dismissed from this case. In the Non-Final R&R, the Magistrate Judge found that Plaintiff "failed to state facts sufficient to [assert] a plausible claim against Ragsdale in his individual capacity and [found] nothing to suggest that dismissal of the claims asserted against Ragsdale in his individual capacity at this stage of the case would be 'premature.'" ([20] at 51). The Magistrate Judge further held that Plaintiff did not meet her burden to show that "qualified immunity is inappropriate for Ragsdale." (Id. at 54). The Magistrate Judge found finally that, "because a claim asserted against a supervisory employee in his official capacity is redundant with a claim against the employer," the official-capacity claims against Ragsdale should also be removed from the case. (Id. at 54-55).

A "decisionmaker" is someone "who has the power to make official decisions and, thus, be held *individually* liable." Quinn v. Monroe County, 330

F.3d 1320, 1326 (11th Cir. 2003); <u>see also</u> <u>Kamensky v. Dean</u>, 148 F. App'x 878, 879 (11th Cir. 2005). A "decisionmaker" has the power to terminate an employee, "not merely recommend the termination." <u>Id.</u> at 1328. Here, Plaintiff's only allegation regarding Ragsdale's individual liability is that "[o]n March 24, 2016, the Board and Mr. Ragsdale capitulated to the complaining parents' demands and voted to move [Plaintiff] to another school 16 miles further from her home." ([11] ¶ 47). The Court agrees with the Magistrate Judge here that this allegation "falls far short of . . . Ragsdale 'recommend[ing] and advocat[ing] for Plaintiff to be transferred, much less that he was the proximate cause of the decision." ([20] at 51). Ragsdale simply could not have been in this instance, according to Plaintiff's Complaint, the "decisionmaker," as defined by Eleventh Circuit precedent.

It is also clear to the Court that Plaintiff's Complaint, even taking all of the allegations as true, fails to sufficiently plead why Ragsdale is not entitled to qualified immunity. "Qualified immunity offers 'complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1193-94 (11th Cir. 2002) (quoting <u>Thomas v. Roberts</u>, 261 F.3d 1160, 1170 (11th Cir. 2011)). A right is clearly established when it would be clear to a reasonable

official that his conduct is unlawful under the circumstances.  Bashir v. Rockdale Cnty., 445 F.3d 1323, 1330 (11th Cir. 2006).  Qualified immunity also requires that a public official be acting within the scope of his discretionary authority when the alleged wrongful acts occurred.  Id.  If the public official demonstrates that his actions were performed pursuant to, and within the scope of, his discretionary authority, the burden then shifts to the plaintiff to demonstrate that the official is not entitled to qualified immunity.  Id.

Plaintiff first fails to assert any facts or arguments demonstrating that Defendant was acting within his discretionary authority.  Assuming, moreover, that Defendant was acting within his discretion, Plaintiff states in her Complaint that Ragsdale violated her clearly established constitutional rights "by taking sides in a dispute over religious dogma, . . . by punishing her for what he believed were "Buddhist" or anti-Christian activities outside of the school . . . [, and] [b]ecause [he] promoted a particular religious viewpoint by exerting influence over the Board in order to act against [Plaintiff]." ([15] at 24-25; see also [11] ¶ 47).  The Magistrate Judge found that Plaintiff presents no further argument, and no citation to any legal precedent, explaining how or why Ragsdale's conduct was unlawful under the circumstances. Bashir, 445 F.3d at 1330-31 & n.9.  The Court agrees

with the Magistrate Judge that "Plaintiff has not met her burden to show that qualified immunity is inappropriate for Ragsdale." ([20] at 54).

Finally, "[b]ecause suits against a municipal officer sued in his [or her] official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly (provided, of course, that the public entity receives notice and an opportunity to respond). Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991); see also Kentucky v. Graham, 473 U.S. 159, 166 (1985). The Court thus concurs with the Magistrate Judge's finding that the official capacity claims against Defendant Ragsdale should be dismissed, and he should be dropped from the case.

The Court finds no plain error in these findings and recommendations, and Plaintiff's claims against Defendant Ragsdale, both in his individual and official capacity, are dismissed. See Slay, 714 F.2d at 1095.

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Magistrate Judge Alan J. Baverman's Non-Final Report and Recommendation [20] is **ADOPTED AS MODIFIED**.

**IT IS FURTHER ORDERED** that Defendant Cobb County School

District's Objections to the Non-Final R&R [22] are **SUSTAINED IN PART** and **OVERRULED IN PART**.  The Objections are **SUSTAINED** with respect to Plaintiff's Title VII religious discrimination and retaliation claims.  The Objections are **OVERRULED** as to Plaintiff's Establishment Clause and municipal liability claims.

**IT IS FURTHER ORDERED** that Defendant's Second Motion to Dismiss [14] is **GRANTED IN PART** and **DENIED IN PART**.  Defendants' Motion to Dismiss is **DENIED** as to Plaintiff's Establishment Clause and municipal liability claims.  Defendant's Motion to Dismiss is **GRANTED** as to Plaintiff's remaining claims.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss [9] is **DENIED AS MOOT**.

**SO ORDERED** this 18th day of January, 2018.

_William S. Duffey_
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE